Mr. John, whenever you're ready. May it please this honorable court, my name is Joe John. I have the privilege to appear before this court and represent the appellant, Patricia A. Baker, in this case. This case may be styled Patricia Baker v. Jessica Baker, but there is certainly another Baker that is deeply involved in this case, and that is the late Frank Baker. The appellant knew Frank her entire life since she was five years old. They were close family friends. They married in 1998. If we could stop by, you're going into some stuff that we may need to get into that relates to the relationship, but if I could just ask a couple questions kind of off the beginning. Do you agree that if PSA unambiguously indicates, and this is a hypothetical because I know you dispute this, that if it unambiguously indicates that your client was not to receive the beneficial interest, that that would take precedence over the previously beneficial designation? I would agree that the law does stand for that. If it was clear and unambiguous. Okay. I'm not trying to cut you off, but you've got limited time. As I understand, you have two positions, basically. One is that the basic issue of a right versus things beyond the right, right and a privilege, and the second is your interpretation of the second part of 550. Is that correct? That's correct. Do you prevail if you don't have to win both of those? If you win on either one of those, do you believe you prevail? Yes. Let me ask you this. Let's assume for the sake of discussion that I think the may change the beneficiary language creates an ambiguity. Not that it's unambiguous in your favor and not that it's unambiguous in Jessica's favor. If it's ambiguous, what's the result? Does that mean you prevail because it's ambiguous or do we remand for a trial to determine Frank's intent? I believe if it's ambiguous, then we do have to look and focus on the intent. I believe the facts in this case clearly show the intent. The intent was to keep her as a beneficiary, get over three years of change to the beneficiary, and he didn't do it. And the extrinsic evidence that we talked about before all goes toward his intent. You can't understate the fact that it's a case-by-case analysis if it's an ambiguity. We don't believe it is an ambiguity because can husband may change beneficiary? The may is used to not shall. So they say he may. Implied within that, he may not. And that gave him the right. He was given rights. They won't argue that he did not obtain anything. Before you get there, I want to make sure because I'm interested in the answer to that question. I think you might have skipped over it. If we found it to be ambiguous, would we have to remand it for a trial on intent? So the court here issued a legal ruling based on its interpretation of the language. If we found it to be ambiguous, I understand all your arguments. But are we the court that would decide that? Or wouldn't we remand it for the trial court to have a trial on what Frank's intent was in light of the ambiguity of the PSA? The judge, the lower court, did rule it was unambiguous. Therefore, he determined the intent. So if there is a determination that there is an ambiguity, then it could go back to the lower court. Why is that? I know it could. I mean, we can get to the side, but the question is should. And if it's ambiguous, and you go back to the first question I asked you, which was don't you need an unambiguous change of an unambiguous designation of a beneficiary? Does the fact that it's unambiguous, is that the end of the story and you win? Or do we go back for a trial to determine the intent? In this scenario, I'd say it's over. We win. Because it's ambiguous. Not because it's. If we assume it's ambiguous, do you win for that reason alone? I believe that we would win based on all the other factors we have in the case, especially the fact that it says right, not right title and interest. It says policy, not policy proceeds. If there is an ambiguity, the court, we believe it's clear and unambiguous in our favor. If the court does determine there is an ambiguity, then the lower court did not get to that, address that, because he said that it was unambiguous and clearly in favor of the applicant. So that issue was not resolved if there was an ambiguity. But I think the facts in this case clearly show the intent would not need to go back to the lower court. I think it needs to be a bright line rule if there's going to be a waiver of the relinquishment of a beneficiary interest. Here it just said right. But why is that? So I understand Judge Quattlebaum's question and sort of your argument, in essence, to be that we require particular clarity in the PSA in order to revoke the designation in the life insurance contract. Correct. But you might imagine the rule being the opposite. So Texas has the rule that goes the other way, which says you have to be particularly unambiguous in re-designating your ex-wife as a beneficiary. Otherwise, we assume, at least in Texas, that the divorce ends the beneficial interest. Now, I understand Texas isn't West Virginia. But I can imagine West Virginia or Texas taking either side of that, placing, in essence, the thumb on the scale in either direction. Or I can imagine them putting the thumb in either place and just sort of trying to make the best reading of the two. Why is it that we should assume that clarity is required in the PSA? Because West Virginia and Texas, they do have a statute that would revoke automatically the designation of the spouse before the divorce, in 41-1-6, for probate assets. If they wanted to have that same law for non-probate assets, they certainly could have enacted that. They did not. There also is no re-designation law in West Virginia. And there is also nothing in that insurance contract between Mr. Baker and Jackson National Life that provides for a re-designation. It says if you're going to change your beneficiary, you must notify us. And he was told that in the contract and in a letter sent to him. You must notify us. He didn't notify them. Under paragraph 13 of the PSA, it even states that he agrees to execute, acknowledge, and deliver any and all papers that may be reasonably required to infatuate the objects and purposes of this agreement. If he thought the objects and purposes of this agreement was to divest Patty of her beneficiary interest, then he would have changed that designation form. So unlike Texas, we don't have re-designation. We do have a specific law that would revoke for the probate asset. But West Virginia, the non-probate and probate are totally separate and distinct. Under the theory that was advanced by the FLE here, Frank Baker actually loses rights under the property settlement agreement. He cannot now ever designate his lifelong companion and wife who battled through this treatment. That's not what I understand his argument to be. Whether I'm suggesting which way I'm thinking about it, I understand his argument to be he could do that, but he's got to do it unambiguously after the execution of the PSA. It's our position that the relinquishment had to be specific and explicit, and that was not done in this particular case. Why isn't the right to be a beneficiary one among the any and all right to life insurance policy? I think there's a very vast... That's pretty broad language, right? Any and all right? It's broad where it says any and all right, but most ones where they talk about the beneficiary interest, because there's an ownership right in a life insurance policy. It's Graham versus Graham. That's mine. It's an ownership right. That's the right to cash, surrender value, to designate the beneficiary, or demand to be the beneficiary. Those are rights, and they concede it's a present right that she gave up, or any and all right to the policy. But it doesn't say any and all right, title, and interest. It doesn't say policy and proceeds. So it isn't that broad to encompass that interest. You have to consider the future aspect, and it wasn't a right. It was only something that Frank Baker gave to her after the divorce. He kept her as the beneficiary as he wanted to do. So she couldn't have waived. It was a present waiver, not some future interest that he was able to provide to her after the divorce. Isn't your second part of 5B much stronger than your right to argue about right and privilege? I mean, it seems to me you're fighting the majority of the cases. You're fighting the Graham case. I know these aren't directly on point. You're fighting the Aaron Publish Simmons case. You're fighting the Fifth Circuit and O'Brien, and you're fighting the West Virginia 4333A statute, all of which kind of suggest that you don't have to have quite the precision in the language you're talking about. It seems to me that argument's a tough one for you, and your stronger argument is the second part of 5B. There's no doubt. The second part of 5B, if you ask me what the Bright Line Rule, and if those words weren't in there, they'd have a better argument, the last six words. But they've been rendered meaningless by the lower court's ruling. That is a very strong argument. Can I ask you about that? Because I think your colleague's view is that, no, they still have a meaning. It's that normally there would be, and I can't remember the technical term, but there would be like during the divorce proceedings, the husband would not be able to change anything about the life insurance policy, and this allows him to make that change? Well, during the divorce in Graham v. Graham, he couldn't have changed it anyway. They want to say that he's free to change it, but he wouldn't have been able to change it because Graham says it's a marital asset or property. This claim was only incorporated in the final word, so this took place after the divorce was final, and husband may change the beneficiary. I'm sorry, say the part before that. Your response to that argument, the defendant liked a piece of it, is that the PSA didn't come into effect until the divorce was final, and so it couldn't possibly have been intended to allow him to change it before that time while the divorce was pending because it didn't happen until it was final. That's correct. Okay. And when they say this, and I know their position is this. It's a nullity or it's redundant. That can't be true, and husband may change the beneficiary. After it was accepted by the court, entered the final order, accepted the property settlement agreement, then that policy was totally 100% Frank Baker's. He had the right to do with it whatever he wanted. He didn't need assurances that he may change the beneficiary. He didn't need that because it was his 100%. Just like there's not in this particular paragraph language that says, and he may surrender the policy for cash, they don't need to say that because it's his policy. He can do whatever he wants with it, and she surrendered her cash surrender right to that. So and husband may change the beneficiary shows the intent that a beneficiary interest was not waived, that he could change it if he wanted to. May instead of shall. That's very important because it also says he may not. Can I ask two sort of minor factual questions before your time runs out? One, the record suggests, but I want to make sure I'm correct about it, that Frank paid premiums on this term life insurance on a yearly or quarterly or monthly basis, but he continued to pay them. Correct. And then second, as a term life insurance policy, did it have a cash surrender value? This was a whole life, Your Honor, and it did have a cash surrender value because part of the discussion was he may need to cash that policy out for his medical treatment and care because they had spent all the resources on his medical treatment and care. And so the term, just so I understand, I'm not an insurance guy, so slow it down for me, all right? Sure. So the reason we think about it as being whole life is because while it fixed the premiums for 20 years, it continued after that time. And it had a cash surrender value where a term life would not have a cash surrender value. Okay. So even the fixing of the premiums for 20 years, that's a term but only a piece of the story because at year 21 or year 22, as long as he paid the increased premiums, he continued to have whole life insurance. That is correct. And on that issue, the cash value, I know you can make a claim for anything, but what would be the argument that someone who's not listed as the owner would have any, you know, any colorful claim to the cash value of a policy? Of the whole life policy in this case, it was obtained after they were married. So the courts look, you know, they're paying the premiums paid with marital assets. Then that's what Graham talks about, that it could be marital asset, used marital funds to pay the premium. Therefore, she would have a right, and that's when we focus on the word right because she would have a right to a part of the cash surrender value or to demand the beneficiary. The lower court says that they plainly, the PSA plainly indicates the intent of the parties to eliminate the interest and proceeds, and the PSA explicitly released the beneficiary interest. We strongly disagree. It doesn't do that. The appellee says that the language couldn't be clear to divest her of her interest. It certainly could have been a lot clearer. It could have simply said right title and interest, including policy and proceeds, past, present, and future, and take out those last six words. Those last six words of 5B is what causes this whole case to show that he meant to maintain that beneficiary interest so he could give it and provide for his lifelong companion. Thank you. Thank you. Good morning, Your Honors. Before I begin, I want to point out that it is our position that the life insurance policy at issue here is the term life insurance policy. If you look at the adjoined appendix, page 22, it states that it's an adjustable premium level term insurance to policy age, I believe, 95. So I believe it's a term policy. Could you give me that, J.A.? 22. And I believe that's also on 23 as well and other places within the policy, Your Honor. And what follows from that? While there is no cash surrender value, to the extent that that's an attempt to distinguish Graham, which specifically relied on the fact that it was a term policy with no cash surrender value, this is squarely the same type of policy in Graham. So I just want to make sure I understand. So the argument would be sort of this whole thing has no meaning unless it covers the beneficiary interest in receiving the proceeds from the life insurance policy because there is no other meaningful right to be given up here? Sure, that's one part of the argument, Your Honor. I literally don't understand why it matters. Well, I just want to clear the record about what our position is. Okay. Because I think Justice Richardson asked that question. I understand the question and I understand how you're answering it, but I do want you to explain to me why in trying to interpret Paragraph 5 it matters to me, whether this was a term policy or a life insurance policy. Well, I think Graham stands for the proposition that a beneficiary right is a beneficiary right. It is meritorious property. And as meritorious property, the appellant had a right in it. So that holding in Graham was premised on the fact that it was a term policy, that it did not have a cash surrender value that is similar to the policy that we have at issue here today. So if it's a right, it is contained squarely within Paragraph 5B where it says it's a release of any and all rights the appellant had in the insurance policy. So it goes to the fact that it was a beneficiary right and not merely a beneficiary interest. Okay. I'm sorry. I just said that I understand. I'm not trying to make a particularly big deal out of this, but your point of it being a right versus an interest, it is a right for purposes of marital property, but it's not a right once she's an ex-wife. Once a divorce is finalized and it's been disposed of, either through a property settlement agreement or a final divorce decree, then yes, it's no longer a right. Or if it's not addressed at all, right? So if you took out Paragraph 5 and they went through the divorce and it was finalized and then he dies at some later point, she as the ex-wife doesn't then have a right to it. Oh, but you say the reason she doesn't have a right is because the PSA has sort of an integration clause at the end. Well, sure. That's one of many reasons here. I mean, even if let's assume that the property settlement agreement didn't have anything to do with the insurance policy, didn't even address a life insurance policy, I believe the PSA is broad enough to encompass all rights, all obligations, fees to be the parties. It's meant to be a global, all-encompassing settlement between the parties so they each go their own way. To use the words of the Mac and Daffer case, it's to wipe the slate clean between the parties. Yeah, that might be a better case for you, but you've got 5B to deal with. Sure. So let's assume Frank wanted for Patricia to receive the beneficial interest after the execution of the PSA. Is it your position he should have gone to the insurance company and said, Hey, I know she's the beneficiary. Just want you to know I still want her to be the beneficiary? Absolutely. He had to take some kind of affirmative step to redesignate her as the beneficiary under that policy. He couldn't simply just – the PSA is a present release and relinquishment of any and all rights that she had in that policy. So at the time that she signed the PSA, she was effectively removed as the beneficiary. The contingent beneficiaries stepped into her shoes. Now, if Frank Baker wanted to redesignate her, again, he'd have to take some kind of affirmative steps to redesignate her. And that's supported by the case law. And 13A, which appears to be a general provision that says if there's stuff that – if there's documents that need to be executed to carry out the purpose of this, each side agrees to do so. If the purpose is to remove Patricia as the beneficiary of the policy and that's on file at the insurance company, why wouldn't 13A require Frank to notify the insurance company to clear up the matter based on 13A? Well, I mean, it says – 13A specifically says reasonably required to effectuate the objects and purposes of the agreement. Again, the PSA was a present release and relinquishment of that beneficiary right. So it was gone at that point. There was no need to go ahead and further effectuate the objects and purposes of the agreement. It's already been effectuated by the terms of this agreement. So, I mean, I think what the court is getting at here is that, obviously, 5B is the operative clause here. 5B states that she's releasing any and all rights to the life insurance policy. The Beijing's beneficiary language, I think, you know, there are some questions here about whether that creates an ambiguity. I don't believe it creates an ambiguity. I believe it didn't create any ambiguity as well. Why do you say that? He didn't address the second part of 5B at all, did he? Well, he noted it in his decision. Did he mention the husband may change the beneficiary? Was that discussed at all? I don't believe he went into depth in discussing it. He noted it in his opinion that he was aware of it. He just clearly thought it was unambiguous. I mean, that's what he said in his opinion. Can you explain what work it is that you think that that provision does, that the husband may change the beneficiary? Well, I believe it adds context to what the parties are actually releasing and relinquishing. You know, I think if there's any question here about what rights are actually being released or relinquished vis-à-vis that life insurance policy, this adds context to it. She's releasing or relinquishing her beneficiary right to the policy, and then EGLE may change the beneficiary. It's kind of two sides of the same coin. It's a complete and total disposal of that beneficiary right. Now, obviously, there's also the argument as well that if they thought there was any impropriety of what they were doing because the final divorce decree had not been given yet, that they were permitted to go ahead and change the beneficiary. And it worked not only to Frank Bader's benefit, the decedent's benefit. It also worked to her benefit as well. They worked in tandem with each other. So I think that, you know, the appellant's position is that the decedent always had the right to change the beneficiary. And if he always had the right to change the beneficiary, this may change the beneficiary language. It gives him no new rights, no new privileges, no new benefits. So it's nullifying the existence of that language. It's superfluous at that point. So what this language was designed to do is to reassure the parties again that they were free to go ahead and do this. Can you go back to the very first question that Judge Quattlebaum asked? If we found, just accept hypothetical, right, that if we found this language in total to be ambiguous, do you believe that, does that mean you lose because you require clarity to overrule the clear designation? Or do you believe that would require either a remand or a decision by this court as to the sort of intent of the parties based on the totality of what we've got? I believe a remand would be required. I mean, there's questions of fact at that point about what the parties actually intended. If it's ambiguous, you open it up to extrinsic evidence. And that's a question of fact for the trier of fact to decide what those facts are. So what's the authority on that? And I get the general principle that if a contract is ambiguous, you would then consider extrinsic evidence. But if the legal principle that is that in order to revoke or undo an unambiguous life insurance policy requires an unambiguous document, a subsequent document, does not, what's the authority that an ambiguous subsequent document allows you to go have a trial versus ending your client? Well, I can't put you in any specific case law. And I didn't brief on that subject. General practice is that if there is an ambiguous document, it's a question of fact at that point. Obviously, a question of fact goes to a trial or obviously a bench trial. So I believe that that's required. I mean, we haven't fully developed a factual record at that point. We did some factual discovery here. But I believe more factual discovery would be required if there is a finding that this document is ambiguous. In essence, what you're saying is you challenge the premise of that question. That is that clarity is required to trump the beneficiary designation. You say it's not clarity, it's just you're just making the best call you can make. It doesn't require an heightened standard at all. No, Your Honor. I believe that there has to be specificity and there has to be clarity in this document about what actually is being released or relinquished. It is my position that this document unambiguously releases or relinquishes on many grounds. One, it's the plain language of 5B, and then it's the totality of the agreement itself. It's an all-encompassing global settlement amongst the parties, so they go their own ways. But I think once you read 5B in the context of the entire agreement, I think it is a clear and unambiguous release or relinquishment of that beneficiary right. But if it weren't, I mean, you cite a case, right, from Oregon where they did remand to the lower court to consider. They found something ambiguous. It wasn't clear. It was specific, you know, the whole expectancy interest versus property right. And you think that that case is distinguishable anyway, but in that case, they did send it back to see what the intent was, right? Yes, Your Honor, that is correct, yes. In that case, there was, that court made the distinction between a beneficiary right versus a beneficiary interest. The facts weren't developed properly as they should be to make a decision, so it was remanded to the lower court. Okay. Unless Your Honors have any other questions, I'll give back the remainder of my time. Okay, thank you. Thank you, Your Honor. Thank you. Can I ask one question before we get started? Sure. And I actually meant to ask your colleague about it, but that will be okay. Should we certify the question to the West Virginia Supreme Court? It seems like to me at some level the case turns on, you know, how much clarity is required in order to change the life insurance beneficiary. Different states seem to have looked at that question somewhat differently. We are faced with trying to determine what the West Virginia Supreme Court would do. Is there a reason that we should or should not certify that question to the West Virginia Supreme Court? I don't think there's any reason that you should not. I mean, it's based on state law for sure, because in Graham versus Graham, the only thing out there even touches upon it. And like you said, states are all over the map on this. And I wouldn't say there's any reason not to, because it's never been addressed. It is a state law question. It's never been addressed. To go back, Judge Richardson, and I said it was a term policy. It doesn't matter for one, but they claim it's a term policy on page 16 of the record. It says plan of insurance term $10,000, but right below that is a $240,000 endorsement. And it says combo. So combo term whole life. From Ms. Baker, Patty Baker's deposition testimony, it showed that they talked about the cash surrender value. So obviously they thought with this combination term whole life that he was entitled to cash surrender value. Is there anywhere in the contract, and I mean, we can read it too, but is there anywhere in the contract that would suggest to us that it has an actual cash surrender value? I don't see that just from what they talked about in the word combo underneath the term. But I don't believe that makes a difference, because whether it's a cash surrender value or a term life like in Graham, the interest they were talking about was some expectancy interest. So in this case, what Frank Baker did obtain through this PSA, if there wasn't cash surrender value, then he didn't obtain the cash surrender value. But he certainly obtained the right to change his beneficiary and also his right to keep Patty as his beneficiary. Those are two rights that he did obtain by the use of the word and may change his beneficiary. So he did obtain two rights instead of three if there was no cash surrender value. If there was cash surrender, he'd obtain that as well. But we don't believe that makes a difference whether it's whole life or term. There's still an interest that Graham talks about, and Ms. Baker addressed that and allowed Frank Baker to have that policy on his side of the fence. Under their reasoning, Mr. Baker also received two cars, a couple motorcycles. Under their reasoning, after the divorce, Frank Baker could never, ever provide for his companion, his ex-wife. If he gave her a car, they'd say, wait a minute, you relinquished that in the property settlement agreement. You gave him the car. He could never provide for her. That certainly couldn't be what that property settlement agreement was intended. Ms. Baker said it best. She said the divorce ended our marriage. It did not end our relationship. They had a great relationship. That is some affirmative act, but I'm not sure this is the biggest point in the matter. But I think what his position is that based on 5B, you have to do something affirmative. In the context of the car, the transfer, physical transfer would be that affirmative act. Here we're dealing with a paper route, so it would require a paper act. But in this particular case, the policy itself clearly does not provide for a redesignation. It says you name your beneficiary. If that beneficiary is still there at the time of your death, we pay the beneficiary. That contract language is clear. It does not call for redesignation. It doesn't provide for redesignation. All it provides for is if you want to change the beneficiary, you must notify us. So he was under the affirmative duty to notify them if he wanted to change that. He passed away in 2017. His daughter hadn't talked to him at any time from 2014 through the time of his death. To indicate that he wanted that money to go to his daughter is not supported by the evidence at all. They want to say that he didn't need to do anything because it automatically went to the contingent beneficiaries. That's not so under the language of the contract. He needed to make the affirmative duty to change that beneficiary. He knew he had to change the beneficiary by the terms of the contract. He didn't do it. By not doing it, he knew that proceeds would then go to Patty Baker, who he wanted the policy proceeds to go to. Thank you. Thank you. We'll come down and greet counsel and then we'll hear our next case.
judges: Pamela A. Harris, Julius N. Richardson, A. Marvin Quattlebaum Jr.